## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Petitioner,** | § | |
| | § | **Civil Action No.** |
| **v.** | § | **DR-12-CV-18–AM-CW** |
| | § | |
| **2011 JEEP GRAND CHEROKEE, VIN:** | § | |
| **1J4RR5GT9BC582749 ,** | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION

TO THE HONORABLE ALIA MOSES, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner United States of America's Motion for Summary Judgment. ECF No. 15. In the motion, Petitioner asks the Court to order the forfeiture of the Respondent 2011 Jeep Grand Cherokee, VIN: 1J4RR5GT9BC582749 ("Respondent Jeep"), to the United States of America. The motion was referred to the undersigned pursuant to 28 U.S.C. § 636 for a report and recommendation. After reviewing the motion and Claimant Ultra Protection Armoring, S.A. de C.V.'s response (ECF No. 16), the undersigned recommends that the motion for summary judgment be granted and the Respondent Jeep be forfeited for the following reasons.

### I.  UNDISPUTED FACTS AND PROCEDURAL HISTORY

On March 31, 2011, Customs and Border Protection (CBP) stopped Manuel Trejo Estrada (Trejo),[1] the driver of a commercial trailer, at the outbound Camino Real International Bridge Number Two in Eagle Pass, Texas. Trejo indicated that he was carrying merchandise–the Respondent Jeep–inside the trailer but could not present any documentation on the vehicle. Trejo

---

[1]Trejo is also referred to in the record as Jesus Manuel Estrada Trejo.

was referred to a secondary inspection area because the Respondent Jeep was being exported out of the United States without a required Shipper's Export Declaration (SED). *See* 15 C.F.R. § 758.1(a).[2]

During the inspection, a CBP officer discovered that the Respondent Jeep was armored and suspected that a license was also required to export the vehicle. Trejo was released and asked to return the next day with proper export documentation. Trejo returned with two documents showing the owner and importer/exporter of the Respondent Jeep as Claimant Ultra Protection Armoring, S.A. de C.V. ("Claimant"), a company located in Saltillo, Coahuila, Mexico.[3] The documentation also showed Ultra Armoring, LLC, located in Shelby, North Carolina, as the business that provided the armoring. Trejo also brought an SED, but the SED was obtained only the night before, after the Respondent Jeep was initially detained.[4]

Ignacio Diego Guerra, the contact person for Claimant, was then notified. Guerra advised that the armoring installed on the Respondent Jeep was a Level NIJ III. In addition, Juan Carlos Hueck, the vice president of Ultra Armoring, LLC, completed a "License Determination Fact Sheet." *See* Mot. Summ. J. App. C, ECF No. 15-3 at 14-15. The fact sheet also indicated that the armoring

---

[2] "'The Shipper's Export Declaration (SED) or Automated Export System (AES) record.' The SED . . . is used by the Bureau of Census to collect trade statistics and by the Bureau of Industry and Security for export control purposes. The SED or AES record collects basic information such as the names and addresses of the parties to a transaction; the Export Control Classification Number (ECCN) (when required), the Schedule B number or Harmonized Tariff Schedule number, the description, quantity and value of the items exported; and the license authority for the export. The SED or the AES electronic equivalent is a statement to the United States Government that the transaction occurred as described." § 758.1(a).

[3] The Respondent Jeep was purchased in Mexico, imported into the United States for modifications, and was being exported at the time of the seizure. Mot. Summ J. App. C, ECF No. 15-3 at 4-7.

[4] An SED must be obtained at least one hour prior to the exportation of the vehicle. *See* Resp. to Mot. Summ. J. App. A, De La Rosa Dep. 11:5-8 (Nov. 28, 2012), ECF No. 16-1 at 9.

was a Level NIJ III.[5]  *Id.*

CBP then contacted the Exodus Command Center (ECC) in Washington, D.C., to determine if a license was required to export the Respondent Jeep.[6]  On April 11, 2011, the Bureau of Industry and Security (BIS) determined that the Respondent Jeep with its level of armoring was a commerce controlled item that indeed required a license pursuant to Export Control Classification Number (ECCN) 9A018.b before being exported from the United States.  Mot. Summ. J. App. F, ECF No. 15-6.  Because no such license was issued, the Respondent Jeep was seized for forfeiture pursuant to the United States Munitions List, 22 C.F.R. § 121.1, Category VII.[7]

CBP thereafter initiated forfeiture proceedings against the Respondent Jeep.  In doing so, CBP, in relevant part, sent two notices to Claimant on May 15, 2011, at two different addresses in Saltillo, Mexico, via certified mail.  One notice was returned to sender, and the other notice was successfully delivered sometime before June 20, 2011.  *See* Resp. to Mot. Summ. J. App. E, ECF No. 16-5 at 25, 33.  The notice indicated that Claimant had thirty days from May 15, 2011, to respond, or the Respondent Jeep would be administratively forfeited.  *Id*. at 20-23.  The notice provided various options, allowing Claimant (1) to file a petition for remission or mitigation, (2) to

---

[5]A document from Claimant indicates that the armor level is: "NIJ-STD-0108.01 NIJ III/CEN 1063/1522 LEVEL B6."  The armor type is described as: "Dyneema hb26, 71 PLY composite and/or ballistic high hardened steel armor strike plates used in all direct impact areas."  Mot. Summ. J. App. C, ECF No. 15-3 at 9.

[6]As Petitioner describes, "The Exodus Command Center (ECC) is the principal administrative and technical center that coordinates with export regulatory agencies to seek clarification or rulings to assist the Department of Homeland Security export enforcement officials in the course of their official duties.  The ECC offers technical and procedural guidance related to the Exodus Accountability Referral System (EARS) and export-licensing information from external licensing authorities.  All licensing inquiries must be directed to the ECC."  Mot. Summ. J., ECF No. 15-1 at at 6 n.4.

[7]According to Category VII(a), "'Military type armed or armored vehicles' constitute defense articles under the Arms Export Control Act, 22 U.S.C. §§ 2778 and 2794(7)."  Section 2778 describes the President's role of controlling exports and imports of defense articles and services and states that no defense articles may be exported without a license for such export.

proceed with an administrative forfeiture, or (3) to file a bond and request that the matter proceed judicially.

On July 22, 2011, a person from a North Carolina law firm contacted CBP on behalf of Claimant to discuss the matter. After being advised that paying a $5000 bond would halt administrative forfeiture proceedings, Claimant filed a petition for remission, and alternatively, posted a $5000 bond to proceed with a judicial forfeiture, in the event that the petition for remission was deemed untimely. *Id*. at 16, 46.

Without sending an official notice that the petition for remission had been denied, Petitioner filed a verified complaint for judicial forfeiture on February 23, 2012, against the Respondent Jeep, asserting that the vehicle was subject to forfeiture pursuant to 22 U.S.C. § 401(a) and 19 U.S.C. § 1595a(d) on the grounds that the Respondent Jeep violated customs laws by not having a required export license. Pet'r's Verified Compl. for Forfeiture, ECF No. 1. On February 29, 2012, the Court issued an order for a warrant of the arrest of the Respondent Jeep and ordered Petitioner to give notice of forfeiture in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See* ECF Nos. 2, 3, 4.

Petitioner posted a notice of the forfeiture on an official government website for at least thirty consecutive days, beginning on March 6, 2012, and ending on April 4, 2012. Petitioner also filed a Declaration of Publication on April 12, 2012. *See* ECF No. 8. And in March of 2012, the following potential claimants received notice of the instant forfeiture proceeding, pursuant to Rule G(4)(b): (1) Claimant, via its attorney, on March 12, 2012; (2) Frank Stewart, the owner of Ultra Armoring, LLC, on March 15, 2012; and (3) Jesus Manuel Estrada Trejo, the transporter of the Respondent Jeep, on March 20, 2012. On April 9, 2012, Claimant filed a verified claim asserting

4

its interest in the Respondent Jeep, *see* ECF No. 7, and on April 30, 2012, filed an answer to Petitioner's complaint, *see* ECF No. 12.  No other party filed any claim of interest in the Respondent Jeep.

After discovery was conducted, Petitioner filed the present motion for summary judgment, arguing that Claimant's responses to Petitioner's interrogatories, request for production of documents, and request for admissions demonstrate that Petitioner is entitled to summary judgment. Essentially, Plaintiff argues that the evidence indisputably shows that (1) the Respondent Jeep was fitted with Level III armoring and required a license to export, (2) no license existed to export the Respondent Jeep, and (3) the Respondent Jeep is therefore forfeitable to the United States.

In response to the motion, Claimant does not contest that the Respondent Jeep was fitted with Level III armoring or lacked a required license.  Instead, Claimant raises two arguments.  First, it asserts that the Court should find the forfeiture proceedings defective because (1) Petitioner failed to provide adequate notice to allow it to pursue a timely petition for remission of forfeiture, and (2) Petitioner failed to follow its internal policy before seeking judicial forfeiture.

Second, Claimant argues that the forfeiture would violate the Eighth Amendment for being an excessive fine.  According to Claimant, the vehicle is valued at approximately $105,000 and is fully legal to possess in the United States.  Obtaining an export license and/or paying a monetary penalty for failure to obtain a license would have cost a fraction of the value of the vehicle. Therefore, it argues that a forfeiture would constitute punishment that is grossly disproportionate to the offense, in violation of the Constitution.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Whitt v. Stephens Cnty.,* 529 F.3d 278, 282 (5th Cir. 2008).  Rule 56 mandates that summary judgment be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted).

The movant bears the initial burden of demonstrating that no genuine issues of material fact are in dispute and must do so by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party."  *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).

"If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response.  If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little*, 37 F.3d at 1075.  "Although [the Court draws] all justifiable inferences in the light most favorable to the non-moving party, the non-movant must present sufficient evidence on which a jury

could find in his favor." *Whitt*, 529 F.3d at 282; *see also* Fed. R. Civ. P. 56(c)(1)(B) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

In determining whether summary judgment is appropriate for civil forfeitures, the Court must look at the underlying substantive law and the evidentiary burdens that the law places on each party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). Here, because Petitioner is seeking forfeiture under customs laws (described in full below), the burden of proof provision in 19 U.S.C. § 1615 governs. According to § 1615, the burden of proof is on the claimant to demonstrate forfeiture is inappropriate, provided that "probable cause shall be first shown for the institution" of a forfeiture action. This means that once probable cause is established, "the burden shifts to the claimant to prove entitlement to a valid defense to that forfeiture." *United States v. 1988 Chevrolet Silverado*, 16 F.3d 660, 664 (5th Cir. 1994). Probable cause is "a reasonable ground for belief of guilt, supported by less than prima facie proof, but more than mere suspicion." *United States v. One 1971 Chevrolet Corvette,* 496 F.2d 210, 212  (5th Cir. 1974) (internal quotations omitted).

### III.  LEGAL ANALYSIS

#### A.  Probable Cause for Institution of a Forfeiture Proceeding Against the Respondent Jeep

The first issue is whether Petitioner had probable cause to initiate the present forfeiture proceeding.  As grounds for forfeiture, Petitioner contends that the Respondent Jeep constitutes an article of munition of war under 22 U.S.C. § 401(a), which states:

> Whenever an attempt is made to export or ship from or take out of the United States any arms or munitions of war or other articles in violation of law, or whenever it is known or there shall be probable

cause to believe that any arms or munitions of war or other articles are intended to be or are being or have been exported or removed from the United States in violation of law, the Secretary of the Treasury, or any person duly authorized for the purpose by the President, may seize and detain such arms or munitions of war or other articles and may seize and detain any vessel, vehicle, or aircraft containing the same or which has been or is being used in exporting or attempting to export such arms or munitions of war or other articles . . . All arms or munitions of war and other articles, vessels, vehicles, and aircraft seized pursuant to this subsection shall be forfeited.

Petitioner contends that the Respondent Jeep is a dual-use transport vehicle which was fitted with materials to provide ballistic protection to Level III or better and required a license to be exported. Because the Respondent Jeep did not have a license, Petitioner contends that it is forfeitable pursuant to § 401(a). Petitioner also contends that the Respondent Jeep is forfeitable for the same reasons pursuant to 19 U.S.C. § 1595a(d), which states that merchandise that is attempted to be exported from the United States contrary to law "shall be seized and forfeited to the United States."[8]

The undersigned finds probable cause for forfeiture. The Export Administration Regulations (EAR) govern certain exports, reexports, and activities and "are intended to serve the national security, foreign policy, nonproliferation, and short supply interests of the United States and, in some cases, to carry out its international obligations." 15 C.F.R. §§ 730.6, 730.1.[9] In pertinent part, the EAR regulates the export of commercial items which qualify as "dual-use" items, meaning those that have "both commercial and military or proliferation applications," even if the item is purely

---

[8]"Merchandise exported or sent from the United States or attempted to be exported or sent from the United States contrary to law, or the proceeds or value thereof, and property used to facilitate the exporting or sending of such merchandise, the attempted exporting or sending of such merchandise, or the receipt, purchase, transportation, concealment, or sale of such merchandise prior to exportation shall be seized and forfeited to the United States." § 1595a(d).

[9]For general directions on how to determine if a license is required and how to file a license application, *see* 15 C.F.R. § 730.8.

commercial in its use.  15 C.F.R. § 772.1; *see also* 15 C.F.R. § 730.3.

Not all items subject to the EAR require a license, however.  15 C.F.R. § 734.2.  To determine whether a license is required, one must look to the Commerce Control List (CCL) to see if the item has an Export Control Classification Number (ECCN).  *See* 15 C.F.R. §§ 774.1, 774 Supp. 1.  An ECCN is an alpha-numeric code that reveals why an item is being controlled. Once it is "determined that [an] item is classified under a specific ECCN, [one] must use the information contained in the 'License Requirements' section of that ECCN "in combination with the Commerce Country Chart, *see* 15 C.F.R. § 738 Supp. 1, to determine whether a license is required from the Bureau of Industry and Security.  15 C.F.R. § 738.4.

The summary judgment evidence indicates that CBP Officer Antonio Garcia sent a License Determination Fact Sheet and the documents provided by Claimant to the ECC to determine if licensing requirements applied to the Respondent Jeep. Mot. Summ. J. App. D, Garcia Aff., ECF No. 15-4.  The license determination indicated that the vehicle was armored with "type NIJ-STD-0108.01 NIJIII/Cen 1063/1522 Level B6." Mot. Summ. J. App. F, ECF No. 15-6.  The applicable ECCN was determined to be 9A018.b, *see id.*, which falls under the "Equipment on the Wassenaar Arrangement Munitions List" and includes, in pertinent part, ground vehicles "[m]anufactured or fitted with 'materials' or 'components' to provide ballistic protection to level III . . . or better."  § 774 Supp. 1. Cat. 9.  The Commerce Country Chart indicates that a license is required to export these vehicles to Mexico, for reasons of national security and regional stability.  § 738 Supp. 1.

Other summary judgment evidence also demonstrates that the Respondent Jeep is outfitted with Level III armoring and is thus covered by ECCN 9A018.b.  For example, Juan Carlos Hueck, the Vice President of Claimant, filled out the License Determination Fact Sheet himself, indicating

9

that it is outfitted with "Up-Armor Level Cen-B6/NIJ III."  Mot. Summ. J. App. C, ECF No. 15-3

at 14-15.  Claimant's Answer to the verified complaint also indicates that the Respondent Jeep "has

been upfitted with the after-market installation of certain elements of NIJ Standard 0108.01 Class

III armoring."  ECF No. 12 at 1.

Finally, Claimant's responses to Petitioner's requests for admissions also indicate that the

Respondent Jeep was fitted to a Level III ballistic protection:

> **Request for Admission No. 2:**
> Admit or Deny that the Respondent Vehicle on March 31, 2011, the
> time the Respondent Vehicle was being exported into Mexico, was a
> vehicle fitted with materials to provide ballistic protection to Level
> III as that term is defined in Title 15, Part 774 and designated on the
> Wassenaar Munitions List, Title 15, Part 770.2(h).[10]
>
> **Response to Request for Admission No. 2:**
> UPA objects that this Request seeks a legal conclusion.  Without
> waiving said objection, UPA responds:   Admitted that the
> Respondent Vehicle had been fitted with materials intended to meet
> the cited standard as of March 31, 2011.
>
> **Request for Admission No. 6:**
> Admit or Deny that the Respondent Vehicle on March 31, 2011, the
> time the Respondent Vehicle was being exported into Mexico, the
> armor levels on the Respondent Vehicle were NIJ-STD-0108.01
> Level III/CEN 1063/1522 Level B6.
>
> **Response to Request for Admission No. 6**:
> UPA objects that this Request calls for a legal conclusion.  Without
> waiving said objection, UPA responds as follows: Admitted that the
> armor elements installed for the Respondent Vehicle met those
> standards as of March 31, 2011.  UPA is informed and believes, and
> on that basis responds, that because the entirety of the Respondent
> Vehicle was not armored, then it could not admit that the Respondent
> Vehicle itself would meet the cited standards in its entirety.

---

[10]Section 770.2(h) is titled "Interpretation 8: Ground vehicles" and (1) explains in detail which ground vehicles are covered by the Department of Commerce's licensing jurisdiction and (2) explains the scope of ECCN 9A018.b.

10

Mot. Summ. J. App. B, ECF No. 15-2 at 14-16.  Nor does Claimant contest that the vehicle was so outfitted in its response to the motion for summary judgment.[11]

The summary judgment evidence also shows the Respondent Jeep was not properly licensed. Agent Rick Bazan reviewed the history of the vehicle and noted that the Respondent Jeep should have had an SED and an export license, *see* 15 C.F.R. §§ 30.1(a)[12] and 758.1, which it did not have. Mot. Summ. J. App. H, Bazan Dep. 11:8-16 (Nov. 28, 2012), ECF No. 15-8 at 6; Mot. Summ. J. App. G, Bazan Aff., ECF No. 15-7.  According to Bazan, Trejo had no documentation with him, no SED was requested until after the seizure, and it was later revealed that no export license was ever requested or issued.  *Id.*

Also, in response to Petitioner's requests for admission, Claimant admitted several times that it had no export license for the Respondent Jeep.  Mot. Summ. J. App. B, ECF No. 15-2 at 14-15. And again, Claimant does not attempt to argue in its response to the motion for summary judgment that the Respondent Jeep was properly licensed.

In sum, the summary judgment evidence indicates that there was probable cause to believe that the Respondent Jeep was a dual-purpose munition of war that was not properly licensed as it was attempting to be exported from the United States into Mexico, in contravention with §§ 1595(a) and 401.  It is thus subject to forfeiture.

---

[11]The undersigned finds no support that a partially-armored vehicle would fall outside the scope of ECCN 9A018.b.  Furthermore, Claimant makes no such assertion in its response to the motion for summary judgment.

[12]Section 30.1(a) mandates that "all persons who are required to file export information . . . file such information through the Automated Export System (AES) for all shipments where a Shipper's Export Declaration (SED) was previously required."  As described by Petitioner, the AES "is a nationwide system operational at all ports and for all methods of transportation.  It was designed to assure compliance with and enforcement of laws relating to exporting, improve trade statistics, reduce duplicate reporting to multiple agencies, and improve customer service." Mot. for Summ. J. at 8 n.5.  Essentially, "[e]lectronic filing through the AES strengthens the U.S. government's ability to prevent the export of certain items to unauthorized destinations and/or end users because the AES aids in targeting, identifying, and when necessary confiscating suspicious or illegal shipments prior to exportation."  § 30.1(b).

**B.  Defenses to Forfeiture**

Because Petitioner has established probable cause that the Respondent Jeep is subject to forfeiture, the burden shifts to Claimant to prove entitlement to a valid defense to the forfeiture.  In defense, Claimant raises three issues: (1) It received insufficient notice of the administrative forfeiture; (2) Petitioner failed to follow internal procedures before seeking judicial forfeiture; and (3) A forfeiture would constitute an excessive fine under the Eighth Amendment.

**1.  Procedural Errors**

Claimant first argues that Petitioner failed to show CBP obtained proper service upon Claimant when it delivered notice of the seizure and forfeiture.  According to Claimant, CBP sent a notice of administrative forfeiture to Claimant's address in Saltillo, Mexico, on May 15, 2011.  The notice was stamped with the date June 20, 2011, but there was no delivery signature for the notice by the addressee and no date included in the date box.  Another separate notice was sent to a separate address in Saltillo but was returned as undeliverable.  Claimant therefore argues that notice was deficient.

Second, Claimant argues that the motion for summary judgment should be denied because CBP failed to follow its own internal procedures before seeking judicial forfeiture of the Respondent Jeep.  The notice sent to Claimant, in pertinent part, informed Claimant of the various options available to seek relief from forfeiture and advised Claimant to act within thirty days from the date of the notice.  On July 22, Claimant contacted CBP, and on July 27, 2011, Claimant filed a petition for remission or mitigation, or, alternatively, requested judicial forfeiture, pursuant to 19 U.S.C. §

1618.[13]  A CBP worker purportedly assured Claimant that submitting a bond would halt forfeiture proceedings.  Notwithstanding, Petitioner proceeded with judicial forfeiture of the Respondent Jeep before CBP ever explicitly denied the petition for remission.

The undersigned finds no merit to these arguments.  First, Claimant did not properly raise the issue of notice or remission in its answer or in a counterclaim. "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading," except certain defenses that can be raised by motion or by counterclaim.  Fed. R. Civ. P. 12(b).  In addition, a "pleading must state as a counterclaim any claim that–at the time of its service–the pleader has against an opposing party if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1).

In presenting defenses in a responsive pleading, a party must "state in short and plain terms its defenses to each claim asserted against it."  Fed. R. Civ. P. 8(b).  And if presenting a counterclaim, a party must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  No such claim or defense was included in any responsive pleading.  Because the issues were first raised in the response to the motion for summary judgment, these arguments are not properly before the Court.  *See United States v. Approximately 1,170 Carats of Rough Diamonds*, No. 05-CV-5816, 2008 WL 2884387, at *14 (E.D.N.Y. Jul. 23,

---

[13]Section 1595a(c)(5)(A) allows the Government to remit a forfeiture pursuant to 19 U.S.C. § 1618.  Section 1618 allows a person interested in any seized merchandise to file a petition for the remission or mitigation of a forfeiture, which may be granted if the Secretary of the Treasury finds no willful negligence or intent to defraud the revenue or violate the law.

2008) (citing *Andrx Pharms., Inc. v. Biovail Corp.*, 276 F.3d 1368, 1379-80 (Fed. Cir. 2002)).[14]

Even assuming Claimant had properly raised the issues, it has failed to state any valid grounds for relief. The Fifth Amendment states, "No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Essentially, to satisfy due process concerns, "individuals whose property interests are at stake are entitled to notice and an opportunity to be heard." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (internal quotations omitted). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Dusenbery v. United States*, 534 U.S. at 161. Due process, however, "does not require actual notice or actual receipt of notice. Nor does it require the government to make 'heroic efforts' at notice." *United States v. Robinson*, 434 F.3d 357, 366 (5th Cir. 2005) (quoting *Dusenbery*, 534 U.S. at 170). Also, a "potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Fed. Supplemental R. Civ. P. G(4)(b)(v).

The undersigned is in agreement with Petitioner that because the Respondent Jeep was not administratively forfeited, Claimant cannot raise any issues with regards to CBP's administrative procedure. "Remission proceedings are not *necessary* to a forfeiture determination, and therefore are not constitutionally required." *United States v. Von Neumann*, 474 U.S. 242, 250 (1986). Therefore, a lack of notice of an administrative forfeiture that did not result in an actual forfeiture would not raise any due process concerns. And such would not bar the government from

---

[14]Claimant raises the affirmative defense that it has been deprived of its property without due process of law, but the only reason it provides is that "the Government has unduly delayed the civil forfeiture proceeding." Claimant's Answer at 4, ECF No. 12. Undue delay is not at issue here.

commencing a civil judicial forfeiture action. *Manjarrez v. United States*, Nos. 01 C 7530, 01 C 9495, 2002 WL 31870533 (N.D. Ill. Dec. 19, 2002). Thus, even if Claimant did not receive adequate notice of the administrative forfeiture, such error is harmless. The important factor is whether Claimant had reasonable notice of the present judicial forfeiture, and Claimant does not dispute such notice.

Notwithstanding, Claimant does not even contend that it did not have notice of the administrative forfeiture. Rather, Claimant complains of the lack of a signature and lack of a date on the return receipt. Based on these deficiencies, Claimant contends that Petitioner has not shown that notice was effected. The problem with this argument is that the government need not show proof of actual notice. Rather, the Government need only give notice in a method reasonably calculated to apprise a party of its interest in the seized property. And although sending notice via methods such as certified mail has long been an accepted practice, notice can also be sent, for example, via regular mail with no proof of delivery or even leaving notice on a door. *See Jones v. Flowers*, 547 U.S. 220 (2006).

Even so, the summary judgment evidence indicates that an employee of Claimant signed for the certified mail in the box for "Office of Destination: Employee Signature." Resp. to Mot. Summ. J. App. E, ECF No. 16-5 at 25. Even though there is no signature in the address for "Signature of Addressee," it is unclear how Claimant can argue that the actual addressee, Claimant Ultra Protection Armoring S.A. de C.V., could sign for the letter, being that it is a legal entity and not an actual person capable of signing for a letter. And even though there is no date in the official "Date" box, the receipt was either stamped by postal authorities on June 20, 2011, or received on that date by CBP and stamped accordingly by its personnel. *Id*. at App. B, Lopez Dep. 29:12-15 (Nov. 28, 2012),

15

ECF No. 16-2 at 14.  Either way, the record indicates that Claimant did indeed receive actual notice of the administrative forfeiture sometime prior to June 20, 2011.

As to the denial of Claimant's petition for remission, the Court lacks any authority to review its denial.  *See, e.g., Bailey v. United States*, 508 F.3d 736, 739 (5th Cir. 2007) (holding that a claimant "may only challenge a completed forfeiture for violations of due process"); *United States v. One 1970 Buick Riviera*, 463 F.2d 1168, 1170 (5th Cir. 1972) (noting that judicial review of the denial of a request for remission is "controlled by the long-standing, judge-made rule that the Attorney General has unreviewable discretion over petitions under 19 U.S.C. § 1618"); *La Chance v. Drug Enforcement Admin*., 672 F. Supp. 76, 79 (E.D.N.Y. 1987) (holding that an agency's denial of remission of forfeiture "is a matter of grace and discretion delegated solely to the exclusive authority of the administrative agency (or Attorney General)").  Notwithstanding, Claimant had thirty days from the date of the letter to respond to the notice of administrative forfeiture.  The letter was dated May 15, 2011, yet Claimant did not respond until July 22, 2011, at the earliest.  It was certainly no abuse of discretion to deny the petition as untimely.[15]

Finally, Claimant's argument that CBP personnel misled it into believing that paying a bond would stop forfeiture proceedings likewise has no merit.  According to the notice sent to Claimant, paying a bond would halt the *administrative* forfeiture and allow the forfeiture to proceed judicially. Resp. to Mot. Summ. J. App. E, ECF No. 16-5 at 20-23.  When paying the bond, Claimant even noted that it was doing so to be able to proceed judicially, in the event that its petition for remission

---

[15]  Even though CBP may not have explicitly denied the petition as untimely, the petition was clearly untimely, and by proceeding with judicial forfeiture, the petition was implicitly denied.  Its untimeliness was also verified by the deposition of Liza Lopez, a CBP official.  Resp. to Mot. Summ. J. App. B, Lopez Dep. 20:21-25, 21:1-10 (Nov. 28, 2012), ECF No. 16-2 at 10-11, 19.

was deemed untimely.  *Id*. at 13-17.  Because the petition was denied as untimely and the case referred for judicial proceedings, just as anticipated by Claimant, the undersigned is frankly unclear of what Claimant complains.

## 2.  Excessive Fine Under the Eighth Amendment

The final issue that Claimant raises is whether the forfeiture of the Respondent Jeep would constitute a violation of the Eighth Amendment.[16]  Claimant asserts that the value of the Respondent Jeep, approximately $105,000, is grossly disproportionate to the customs violation.  In support, Claimant submits proof that it subsequently received export licenses for two almost identical armored vehicles, thereby indicating that Claimant could have easily obtained a similar license for the Respondent Jeep had it known to do so.  Claimant also contends that the vehicle was legal to possess within the United States, was not carrying contraband, could have been simply turned around at the border without being seized,[17] and was not involved in any subsequent criminal prosecution. Therefore, Claimant indicates that the forfeiture is essentially unfair punishment of an innocent party.

The undersigned finds no support to this argument.  The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  Essentially, the Eighth Amendment's Excessive Fines clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Austin v. United States*, 509 U.S. 602, 609-10 (1993) (internal

---

[16]Claimant properly raised this issue in its answer.

[17]Claimant's summary judgment evidence directly contradicts this assertion.  According to the deposition of Walter De La Rosa, the Chief of Field Operations for Customs and Border Protection at the Eagle Pass Port of Entry, no vehicle without required shipping documents or a required license would ever be allowed to simply turn around at the border.  Instead, the vehicle would be held until proper documentation could be shown. Resp. to Mot. Summ. J. App. A, De La Rosa Dep. 11-12 (Nov. 28, 2012), ECF No. 16-1 at 9-10; *see also* App. D, Garcia Dep. 17:6-21, 25:10-20 (Nov. 28, 2012), ECF No. 16-4 at 6, 25.

17

quotations omitted).

In determining whether a civil forfeiture constitutes punishment in the relevant sense and is thus governed by the Eighth Amendment, a court must look at "the penalty imposed and the purposes that the penalty may be said to serve." *United States v. Halper*, 490 U.S. 435, 448 (1989). "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment . . . ." *Id.* This will happen only in the "'rare case' in which the amount of the sanction is 'overwhelmingly disproportionate' to the damages caused by the wrongful conduct and thus 'bears no rational relation to the goal of compensating the government for its loss, but rather appears to qualify as 'punishment' within the plain meaning of the word.'" *United States v. Mojica*, 32 F.3d 567 (5th Cir. 1994) (quoting *Halper*, 490 U.S. at 448-49).

The leading case in analyzing the Excessive Fines Clause in civil forfeitures is *United States v. Bajakajian*, 524 U.S. 321 (1998). In *Bajakajian*, the Court addressed whether the forfeiture of currency for failure to report under 18 U.S.C. § 982(a)(1) constituted punishment for purposes of the Eighth Amendment. The Court noted that traditional *in rem* forfeitures, including *in rem* forfeitures of goods imported in violation of customs laws, were generally not considered punishment against the individual for any offense and thus were not protected by the Excessive Fines Clause. *Id.* at 330, 331. Rather, they were considered remedial in nature to compensate for a monetary loss to the Government. *Id.* at 331. Forfeiture for failing to report currency, in contrast, was based on merely a loss of information to the Government that would not be remedied by the confiscation of the unreported currency. *Id.* at 329. Accordingly, the Court concluded that the currency forfeiture at issue was punitive and thus protected by the Eighth Amendment. In reaching its conclusion, the

18

Court noted that the forfeiture (1) was imposed "at the culmination of a criminal proceeding," (2) required a conviction of an underlying felony, and (3) could not be imposed upon an innocent owner of unreported currency.  *Id.* at 328.

In light of *Bajakaijian*, courts have almost unanimously found that the Eighth Amendment does not apply to forfeitures arising from customs violations.  For example, in *United States v. 1,170 Carats of Rough Diamonds*, 2008 WL 2884387 (E.D.N.Y. July 22, 2008), the court addressed whether the forfeiture of diamonds under the Clean Diamond Trade Act and § 1595a was considered punitive in nature.  The court noted that (1) the conduct of the property owner was irrelevant, (2) the forfeiture fell squarely within the category of *in rem* civil forfeitures for violations of customs laws traditionally considered remedial and nonpunitive, and (3) the purpose of the forfeiture was not to punish the owner but rather to end the trade in conflict diamonds.  *Id.*, at *12.  The court also noted that in contrast with reporting laws, which were designed to control information, customs laws were "designed not only to control the amounts and values of goods in transit to and from the United States, but also to accomplish additional policy objectives, such as levying proper duties and removing from the stream of commerce goods that are contrary to public policy."  *Id.*, at *13. Accordingly, the court concluded that the forfeiture did not constitute punishment and thus fell outside the reaches of the Excessive Fines Clause.  *Id.*

Similarly, the court in *United States v. An Antique Platter of Gold*, 184 F.3d 131 (2d Cir. 1999), held that the forfeiture under § 1595a of a Sicilian antique imported in violation of customs laws prohibiting false statements on customs forms did not constitute a fine under *Bajakaijian*.  The court noted that the antique was considered "classic contraband" that had been imported into the United States, and the nature of the statute that authorized the forfeiture was a customs law that was

19

"traditionally viewed as non-punitive."  *Id*. at 140.[18]

In light of existing case law, the undersigned concludes that the present forfeiture is not subject to the Excessive Fines Clause.  Here, the applicable seizure and forfeiture provisions are §§ 1595a and 440, which bear all the "hallmarks of the traditional civil *in rem* forfeitures."  *Bajakajian*, 524 U.S. at 331.  Unlike the currency forfeiture in *Bajakajian*, a forfeiture under § 1595a or § 440 has no good faith or innocent owner defense, is unconnected to any criminal prosecution, and is not an additional sanction imposed upon a person guilty of a crime.

The applicable forfeiture statutes are simply imposed for violating customs laws that are designed, among other things, to regulate articles of war for purposes of national security and regional stability.  Forfeiture of the property serves a remedial purpose by providing a "reasonable form of liquidated damages for violation of the [export] provisions . . . and serves to reimburse the Government for investigation and enforcement expenses."  *One Lot Emerald Cut Stones*, 409 U.S. at 237; *Halper*, 490 U.S. at 445 (costs of detection and investigation are remedial purposes); *In Re 1650 Cases of Seized Liquor*, 721 A.2d at 108 ("The [$100,000] value of the property can be viewed as liquidated damages for the costs to the State of enforcing its liquor control laws.").  The undersigned therefore concludes that §§ 440 and 1595a are remedial in nature and not subject to the

---

[18]*See also One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232 (1972) (finding it remedial to impose a penalty equal to the value of an undeclared article even if there is no pecuniary loss to the government); *United States v. Davis*, 648 F.3d 84 (2d Cir. 2011) (finding forfeiture for a customs violation to fall outside the reach of the Eighth Amendment); *In Re 1650 Cases of Seized Liquor*, 721 A. 2d 100, 108 (Vt. 1998) (holding that a state law providing for the forfeiture of liquor transported through Vermont without the required liquor license did not implicate the Eighth Amendment under *Bajakajian* because, lacking the required license, the liquor had become contraband, rendering it forfeitable irrespective of the innocence of the owner).  *But see United States v. Approximately 600 Sacks of Green Coffee Beans*, 381 F. Supp. 2d 57, 63-64 (D.P.R. 2005) (finding a forfeiture imposed to remove items unfit for human consumption to be both remedial *and* punitive and thus subject to the Eighth Amendment.  However, because the Government's punitive and remedial goals were both legitimate and required the forfeiture of the entire 600 sacks of coffee, the forfeiture was not excessive or grossly disproportionate).

20

Eighth Amendment Excessive Fines Clause.[19]

## IV.  CONCLUSION

The undersigned finds that Claimant has not met its burden in establishing that a genuine issue of material fact exists in this case.  Accordingly, the undersigned **RECOMMENDS** that the motion for summary judgment be **GRANTED** and the Respondent Jeep be forfeited to Petitioner. The undersigned further **RECOMMENDS** that all right, title, and interest of Claimant or any other potential claimants in the Respondent Jeep be forfeited to Petitioner.

## V. NOTICE

The United States District Clerk shall serve a copy of this report and recommendation on all parties either by (1) electronic transmittal to all parties represented by an attorney registered as a filing user with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) certified mail, return receipt requested, to any party not represented by an attorney registered as a filing user.  Pursuant to 28 U.S.C. § 636(b)(1), any party who wishes to object to this report and recommendation may do so within fourteen days after being served with a copy.  Failure to file written objections to the findings and recommendations contained in this report shall bar an aggrieved party from receiving a *de novo* review by the District Court of the findings and recommendations contained herein, *see* 28 U.S.C. § 636(b)(1)(c), and shall bar an

---

[19]Claimant makes much out of the fact that the Respondent Jeep was completely legal while in the United States and attempts to distinguish it from other cases where imported items were stolen or were considered contraband.  Despite the legality of the Respondent Jeep while within the United States, the Respondent Jeep became contraband and thus was illegal when the export was attempted without the appropriate license.  The fact is there is little difference between the present situation where it was unclear at the time of the attempted export whether the Respondent Jeep posed a national security risk, and other examples cited by Claimant.  For example, the court in *1,170 Carats of Rough Diamonds* never determined if the diamonds were actually illegal to import into the United States, only if they were properly licensed at the time of import.  It was irrelevant whether the claimant could actually have been able to obtain a license to import the diamonds.  Because customs forfeiture violations need not be willful, the innocence of the owner is irrelevant.

aggrieved party from appealing "the unobjected-to proposed factual findings and legal conclusions

accepted by the District Court" except on grounds of plain error.  *Douglass v. United Servs. Auto.*

*Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).

   **SIGNED** on October 9, 2013.

_____

COLLIS WHITE
UNITED STATES MAGISTRATE JUDGE